**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Claudette Lutz, | ) | No. CIV 98-1076-PHX-EHC |
| | ) | |
| Plaintiff, | ) | **Findings of Fact; Conclusions of Law** |
| | ) | |
| vs. | ) | **And** |
| | ) | |
| | ) | **Order for Entry** |
| | ) | |
| | ) | **of Judgment** |
| Glendale Union High School, District | ) | |
| No. 205; The Governing Board of | ) | |
| Glendale Union High School District No. | ) | |
| 205, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| ———————————————— | ) | |

The case was remanded by the Ninth Circuit to this Court "for further proceedings in conformity with [its] Opinion." <u>Lutz v. Glendale Union High School</u>, 403 F.3d 1061, 1071 (9th Cir. 2005). The opinion provided that the "remand was for the district court to determine liability issues, either after a new trial on that issue, or in its discretion, on the record of the first trial." (<u>Id</u>. p. 1067).

This Court has decided to exercise its "discretion" and to determine "liability issues" and "an appropriate amount of back pay," if any, and to "base its findings on the record of the first trial." <u>Id</u>. p. 1070.[1]

---

[1] The Court will disregard Plaintiff's previous testimony concerning "alleged violations of Glendale's disciplinary policies." <u>Id</u>. p. 1070.

1

2                                        Findings of Fact

3

4        Plaintiff has proved by a preponderance of evidence:

5        1.  Plaintiff was engaged as an educator commencing with her graduation from

6    Arizona State University.

7        2.  Plaintiff was employed by the Defendant Glendale Union High School District

8    (District) as a teacher from 1972 to 1982.  Her administrative "career" commenced in

9    1983.  She was transferred several times to different high schools in the district.

10       3.  Plaintiff was transferred to Thunderbird High School (Thunderbird) in 1990 as an

11   Assistant Principal for Student Services, and held that position until she was terminated in

12   September 1997.

13       4.  Plaintiff received annual overall evaluations by her Principal which included

14   recommendations for a contract for the following school year.  Plaintiffs overall

15   evaluation,  received in the spring of 1997, included a recommendation for a new contract

16   for the following school year.  (1997 - 1998).

17       5.  Prior to 1997 Plaintiff was diagnosed as having Type I diabetes.

18       6.  Plaintiff was diagnosed  early in 1997 as having brittle diabetes.

19       7.  A person with Type I diabetes, who is also a brittle diabetic, can have huge blood

20   changes in blood sugar, without having any warning symptoms.

21       8.  Huge blood sugar swings can cause fatigue, feeling faint, difficulty walking, mental

22   sluggishness, inability to process thoughts or concentrate, inappropriate behavior,

23   interactions with others and emotional turmoil.  The lower the blood sugar level, the more

24   //

25   //

26   //

27   //

28

1   thought processes are affected, as well as potentially life-threatening consequences.[2]

2   Testimony of Laurance B. Nilsen, M.D., Dkt. 216, pgs. 385-400, Exhs. 32 and 36.

3      9.  A diabetic under stress gets very high blood sugar  making it more difficult to keep

4   blood sugar under control. Stress can bring on migraine headaches.

5   _____

6      [2] The Ninth Circuit on April 20, 2001, in a Memorandum Disposition, 8 Fed. Appx.

7   720, reversed an Order of this Court, which had granted summary judgment in favor of
    Defendants:

8         on the sole ground that Lutz had not demonstrated that she was substantially

9         limited in any major life activity.  8 Fed. Appx. at 721.

10     The Ninth Circuit found that:

11        This evidence is sufficient to support a finding that Lutz is substantially

12        limited in the  major life activity of walking. 8 Fed. Appx. at 722.

13  Footnote 2 in the Memorandum Disposition noted:

14

15        Lutz asserts that she is limited in her ability to perform a number of
         other major life activities.  The evidence in the record, however, is inadequate

16        to show that Lutz is *substantially* limited with respect to the other major life
          activities she identified, including thinking, seeing, sleeping, and interacting

17        with others.  Lutz has not provided evidence from which a jury could
          reasonably conclude that she is significantly restricted as to the condition,

18        manner or duration of her ability to perform these major life activities.

19     The Ninth Circuit concluded:

20

21        We decline Glendale's invitation to affirm on two other grounds not
         relied on by the district court. On the present summary judgment record, the

22        answers to the questions whether there was reasonable accommodation,
          available and whether Lutz' disability caused the behavior that led to her

23        termination, cf. *Humphrey v. Memorial Hospitals Ass'n.*, 239 F.3d 1128, 1139-

24        40 (9th Cir. 2001), are not straight forward. We therefore leave those questions
          for the district court to address in the first instance.

25

26     Defendants filed a Petition for Writ of Certiorari with the United States Supreme

27  Court which was denied.  Glendale Union High School District, Petitioner, v. Claudette Lutz,
    534 U.S. 890, 122 S.Ct. 204  (2001).

28

10.  Defendants were aware prior to 1997 that Plaintiff was a diabetic.  Defendants were advised early in 1997 of her diagnosis as having brittle diabetes and the associated disabilities, including avoiding stress, and availability of possible mitigation procedures.

11.  During the 1996-1997 school year, Plaintiff performed the essential duties of an Assistant Principal for Student Services, with reasonable accommodations and mitigation procedures, at no burden to the School District.

12.  Plaintiff met with the District Superintendent and the Thunderbird Principal, in late May 1997, to discuss her most recent evaluation.  She left the meeting expecting she would continue in her position as Assistant Principal for Student Services at Thunderbird.

13.  Plaintiff was called on short notice to attend a meeting at the Superintendent's Office on June 4, 1997.  She was not advised concerning the purpose for the meeting.  At the meeting she was told that she was being transferred to Washington High School (Washington) for the 1997-1998 school year and to take her materials to that school.  Plaintiff requested that her transfer be delayed for six months or a year, to allow her time to accommodate to the transfer, without stress or impacting on her ability to control her diabetic disability.  The request was denied and Plaintiff promptly went to Washington to meet the staff.  She prepared to transfer her materials to Washington.

14.  Plaintiff was notified of termination  proceedings by the District on July 7, 1997 for claimed acts of insubordination and unprofessional conduct occurring after the meeting of June 4, 1997.  She was terminated effective September 5, 1997.

15.  Defendants' actions from on or about June 4, 1997, and continuing through June 11, 1997,  subjected Plaintiff to levels of stress which exacerbated her diabetic disabilities, causing her inability to interact with others and the unusual behavior that led to her termination.

16.  Plaintiff never rejected the transfer to Washington; it was withdrawn by the District Superintendent.

17.  Plaintiff apologized, prior to her Notice of Termination proceedings, in writing to

1   the District Superintendent concerning her conduct on June 6, 1997.

2      18.  There is no evidence that a substantially equivalent job was available which

3   Plaintiff could have obtained.

4      19.  Defendant's termination for insubordination and unprofessional conduct rendered

5   her unemployable as a school administrator.  Testimony of Staci Schonbrun. (Dkt. 217,

6   pgs 475-492).

7      20.  The jury's determination of damages for pain and suffering in the amount of

8   $68,000.00 is accepted by the Court.

9      21.  Back pay in the amount of $690,000.00, will be awarded, covering the period from

10  date of termination to December 9, 2005. (The date of Judgment). Testimony of Larry

11  Stokes, Dkt. 218, pgs. 606-623, Exhs. 28 and 29.

12                                   Conclusions of Law

13     1.  Diabetes, and its related neuropathy, are a disability, which can substantially limit

14  major life activities of ability to process thoughts and to interact appropriately with others

15  when having a low blood sugar reaction.

16     2.  Plaintiff is a qualified individual under the ADA, with a disability, who, with a

17  reasonable accommodation, performed the essential functions of the position that she

18  held, with the requested skill, experience, education and job-related requirements of that

19  position prior to July 7, 1997.

20     3.  Defendants did not engage in an interactive process in good faith to investigate

21  Plaintiff's request for a reasonable accommodation.

22     4.  Termination is not an appropriate action under the ADA, when the alleged

23  misconduct is a direct result of the employer's failure to allow a reasonable

24  accommodation.

25     5.  Back pay is an equitable remedy to be determined by the Court.

26     6.  Back pay compensates an employee for lost wages and benefits between the time of

27  termination and the trial court judgment.  See Johnson v. Spencer Press of Maine, Inc.,

28

1    364 F.3d 368 (1ˢᵗ Cir. 2004).

2    7. Judicial estoppel is an affirmative defense; it was not specifically pleaded by the

3   Defendants; the evidence does not support a claim of judicial estoppel.

4    8. Plaintiff had not applied for or received Social Security Benefits based on her

5   diabetic disability prior to filing this case.

6    9. A Social Security disability award does not consider reasonable accommodations in

7   determining the issue of disability.

8    10. Social Security benefits are a collateral source and cannot be offset against a back

9   pay award.

10   11. Plaintiff is the prevailing party.

11    Accordingly,

12    **IT IS ORDERED**, denying as moot Plaintiff's Motion for Trial on the Record of the

13   Jury Trial. (Dkt. 265);

14    **IT IS FURTHER ORDERED** that the Clerk enter judgment in favor of Plaintiff and

15   against Defendants for back pay in the amount of $690,000.00, with interest from

16   December 9, 2005, calculated pursuant to 28 U.S.C. § 1961, and damages for pain and

17   suffering in the amount of $68,000, for a total sum of $758,000;

18    **IT IS FURTHER ORDERED** pursuant to Fed.R.Civ.P. 54(d)(1) and LRCiv 54.1,

19   that costs are awarded to Plaintiff as the prevailing party, to be fixed by the Clerk;

20    **IT IS FURTHER ORDERED** that Plaintiff file, not later than fourteen days after the

21   entry of judgment, pursuant to Fed.R.Civ.P., 54(d)(2) and LRCiv 54.2, a Motion for

22   Attorneys' fees and related non-taxable expenses;

23    **IT IS FURTHER ORDERED** that any Response/Objections to Plaintiff's Motion for

24   Attorneys' fees and related non-taxable costs, shall comply with LRCiv 54.2, including

25   filing under seal documentation showing fees billed to Defendants, identifying each

26   attorney and the attorney's hourly billing rate(s) (including paralegals) in this case and

27   regularly for clients in other cases, and total hours.

28

1    DATED this 9th day of December, 2005.

2

3

4

5                                        Earl H. Carroll
                                         United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    - 7 -